IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

TORY LENARD TROUP

CRIMINAL ACTION NO.

1:18-cr-00344-SCJ-CMS

## FINAL REPORT AND RECOMMENDATION

Currently before the Court are the following motions (some of which have been supplemented) filed by Defendant Tory Lenard Troup: a motion to suppress evidence obtained pursuant to a geo-location warrant [Docs. 122, 171]; a motion to suppress evidence obtained pursuant to a cell data warrant [Docs. 123, 172]; a motion to dismiss Count One of the indictment based on the purported illegality of the Controlled Substances Act, 21 U.S.C. § 801, et seq. ("CSA") [Docs. 132, 173]; and a motion to dismiss the indictment based on pre-indictment delay [Doc. 183]. For the reasons that follow, I will recommend that the district judge deny each of these motions.

## I.    Motions to Suppress

Troup moves to suppress evidence obtained pursuant to two warrants—one signed in 2013 that required AT&T to provide geo-location data for a cellular telephone associated with him, and a second warrant signed in 2019 for the same

phone's historical cell site data. [Docs. 122, 123]. In his motions, Troup challenges the probable cause for the warrants and requests an evidentiary hearing. The Government responds that the motions should be denied both for lack of standing and on the merits. [Doc. 230].

### A. The Geo-Location Warrant

On November 6, 2013, DEA Task Force Officer Charles Cook presented an application for a geo-location warrant to United States Magistrate Judge Janet King. [Doc. 230-1]. Judge King signed the warrant the same day ("the Geo-Location Warrant"). [Doc. 230-2]. The probable cause for the Geo-Location Warrant was based on an affidavit provided by Officer Cook. [*Id.* at 3–17].

The affidavit states that in April 2012, law enforcement initiated a wiretap investigation into a cocaine trafficking operation. [Doc. 230-2 ¶ 11]. In September 2013, a person who had been caught on the wiretap having drug-related phone communications agreed to provide law enforcement with information about drug activities. The cooperator is referred to in the affidavit as a "Source of Information" or "SOI." [*Id.* ¶¶ 12–13]. The SOI was on federal supervised release at the time and agreed to cooperate in exchange for not being prosecuted in connection with the intercepted communications. [*Id.*]. The SOI was interviewed on September 23, 2013, with his/her counsel present. [*Id.* ¶ 15]. The agents consulted with the U.S.

Probation Office about the situation, and the Probation Office did not object to the SOI providing agents with information regarding the investigation.  [*Id.* ¶ 14].

According to Officer Cook, the SOI identified Troup as having provided the SOI with more than thirty kilograms of cocaine since 2011.  [Doc. 230-2 ¶ 15].  The SOI stated that Troup was living in Atlanta, Georgia, but periodically traveled to obtain cocaine from a source in Houston, Texas.  [*Id.* ¶ 16].  The affidavit states that Troup's trips to Texas were confirmed by toll records from Troup's phone and by information provided by Delta Airlines in response to a subpoena.  [*Id.* ¶ 19].

According to Officer Cook, the SOI told law enforcement that Troup would change the phones he was using for his drug business every two-to-three weeks to avoid law enforcement interception of his conversations.  [Doc. 230-2 ¶ 17].  The SOI reportedly stated that when Troup was in Texas conducting drug business, he would provide the SOI with a new phone, which he would ship to the SOI in Atlanta from Texas.  [*Id.*].  The SOI also stated that Troup had another phone—the phone that is the subject of the Geo-Location Warrant (the "Subject Phone")—that he would use as a social phone.  [*Id.*].  Officer Cook stated that the SOI told them that Troup always had the Subject Phone in his possession, even when he was conducting drug business.  [*Id.*].

3

In his affidavit, Officer Cook states that the SOI told law enforcement that on September 22, 2013, Troup used the Subject Phone to tell the SOI to call Troup's "other phone" to discuss a drug debt the SOI owed Troup.  [Doc. 230-2 ¶ 18]. According to the affidavit, the SOI stated that the SOI called Troup's "other phone" within minutes, and they discussed the drug debt further.  [*Id.*].

The affidavit states that on November 5, 2013, the SOI met with agents again, at which time the SOI advised that the SOI had spoken with Troup the previous day on the Subject Phone, and they agreed to meet in person.  [Doc. 230-2 ¶ 20].  The SOI told the agents that the SOI and Troup met in person that same day and, during this meeting, Troup stated that he would be travelling to Texas in the near future to purchase cocaine from his Houston source and was planning to travel from Texas to California to meet a new source for marijuana.  [*Id.*].

The affidavit states that the investigation revealed that Troup had two federal drug convictions—one resulting in a 48-month sentence and another resulting in a 60-month sentence.  [Doc. 230-2 ¶ 15].

Officer Cook concludes the probable-cause portion of his affidavit by stating that the geo-location data from the Subject Phone would assist law enforcement in their surveillance of Troup and his suspected conspirators.  [Doc. 230-2 ¶ 21]. According to Officer Cook, the information would help the agents learn more about

the network of suspected conspirators, as well as suspected customers, stash houses, and other individuals and locations that Troup might have been using to facilitate his drug activities. [*Id.*].

   B.  *The Cell Data Warrant*

   On March 11, 2019, more than five years after the Geo-Location Warrant was issued and nine months after Troup was indicted in this case, DEA Task Force Officer Michael Hannan presented an application for records and information associated with same Subject Phone to United States Magistrate Judge John K. Larkins III. [Doc. 230-3]. Judge Larkins signed the warrant the same day ("the Cell Data Warrant"). [Doc. 230-4]. The probable cause for the Cell Data Warrant was based on an affidavit provided by Officer Hannan. [*Id.* at 3–15].

   Officer Hannan states that Troup had been indicted by a federal grand jury on September 4, 2018 for being part of two conspiracies that began no later than November 2008 and lasted until March 2018. [Doc. 230-4 ¶ 12]. He then includes some of the same facts that Officer Cook relied upon more than five years earlier in connection with the Geo-Location Warrant. Officer Hannan describes information provided by "SOI#1" (who appears to be the same SOI from Officer Cook's earlier affidavit), and relates that SOI#1 advised law enforcement that:

   From 2011 to August 2013, TROUP and/or his co-defendant in the
   current Indictment, Franklin Troup, supplied SOI#l with over 30

5

kilograms of cocaine. SOI#l stated that TROUP would travel from Atlanta, Georgia to Texas, acquire drugs, and ship the drugs to customers in Georgia and South Carolina. Once TROUP received payment from his customers, he would pay his source of supply in Texas and return to Atlanta. Agents confirmed that TROUP made several trips from Atlanta to Texas during the time period 2011-2013. TROUP's Atlanta/Houston travel patterns have been corroborated in part by analysis of records from airlines regarding TROUP's travel, and analysis of bank accounts showing withdrawals in Houston. Agents have also conducted physical surveillance of TROUP in Houston.

[Doc. 230-4 ¶ 14].

Officer Hannan goes on to state in his affidavit that subscriber information from AT&T for the Subject Phone showed that the account had been in service since May 2008, during which time it had been subscribed to a person named "Tory Troup," with mailing and email addresses that are the same as those associated with Defendant Troup.   [*Id.* ¶ 16].   Officer Hannan states that investigators needed historical cell site records for the time period of the conspiracies alleged in the indictment, November 2008 through March 2018, as evidence of Troup's travel patterns and would establish specific dates and times that Troup was in locations in furtherance of his criminal activities.  [*Id.* ¶¶ 17, 18].

### C. The Fourth Amendment and Standing

In its response, the Government first argues that the Court need not reach the merits of Troup's challenges to the probable cause determination because Troup has

failed to show that he has standing to bring such challenges. [Doc. 230 at 3–7]. The

Supreme Court has held:

> Fourth Amendment rights are personal rights which, like some other
> constitutional rights, may not be vicariously asserted. A person who is
> aggrieved by an illegal search and seizure only through the introduction
> of damaging evidence secured by a search of a third person's premises
> or property has not had any of his Fourth Amendment rights infringed.
> And since the exclusionary rule is an attempt to effectuate the
> guarantees of the Fourth Amendment, it is proper to permit only
> defendants whose Fourth Amendment rights have been violated to
> benefit from the rule's protections.

*Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). "The proponent of a motion to

suppress has the burden of establishing that his own Fourth Amendment rights were

violated by the challenged search or seizure." *Id.* at 130 n.1 (citations omitted).

Here, Troup has made no such showing despite having been provided with the

opportunity to perfect his motions. Troup fails to allege any facts to support a

reasonable expectation of privacy in the Subject Phone. Although the evidence

presented in the warrant applications shows a strong likelihood that he was, in fact,

the user and subscriber of the Subject Phone for a number of years, Troup has not

made such a claim in his filings, preferring instead to keep the facts around the

ownership and use of the Subject Phone ambiguous.[1] In the absence of any attempt

---

[1] Troup appears to be trying to disassociate himself from the Subject Phone by, among other things, referring to the Subject Phone as "allegedly" belonging to him. [Doc. 123 at 1; Doc. 172 at 1]. The Government aptly describes this tactic as

to show that Troup had a reasonable expectation of privacy in the Subject Phone, the two motions to suppress may be denied on this basis.  *See United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (affirming denial of a motion to suppress where the motion did not include any facts that might have demonstrated that the defendant had a reasonable expectation of privacy in the location searched).

But, as explained below, even if Troup had shown that he has standing to challenge the warrants, his motions should nevertheless be denied on the merits.

*D. Probable Cause*

In his various motions and filings, Troup argues that the affidavits offered in support of the two warrants do not provide probable cause to justify the issuance of the warrants.  He makes the following arguments: (1) the SOI's information was not sufficiently reliable because (a) some of the information was not corroborated and (b) the SOI was cooperating with law enforcement in the hope of receiving favorable treatment on possible future charges; (2) there was a legitimate reason for his travel to Texas; and (3) the toll data obtained by the agents "would not have indicated locations, but only information concerning telephone to telephone communication." [Doc. 219 at 4–6].  Troup also makes two arguments specific to the 2019 Cell Data

---

"purposeful ambiguity," whereby Troup seeks to challenge the constitutionality of the warrants while preserving his ability to later argue that someone else used or possessed the Subject Phone.

Warrant: (1) that the facts stated in the supporting affidavit were stale;[2] and (2) that to the extent the probable cause from the Cell Data Warrant was based on evidence obtained via the earlier Geo-Location Warrant, such evidence is fruit of the poisonous tree.  [Doc.  123 at 1; Doc. 172 at 1; Doc. 219 at 6].  He asks that all evidence obtained pursuant to both warrants be suppressed, and he requests an evidentiary hearing.  [Doc. 219 at 7].

"[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate judge's decision to issue the warrant."  *United States v. Bushay*, 859 F. Supp. 2d 1335, 1379 (N.D. Ga. 2012) (citing *Massachusetts. v. Upton*, 466 U.S. 727, 728 (1984)).  Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.  *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  The search warrant affidavit must "state facts sufficient to justify a conclusion that evidence or contraband will

---

[2] In his original motion to suppress evidence obtained from the Geo-Location Warrant, Troup claimed that the facts stated in the application for that warrant also were stale.  [Doc. 122 at 1].  Troup later withdrew his claim regarding staleness in connection with the Geo-Location Warrant.  [Doc. 171 at 1].  Troup's staleness argument now is directed only at the later-filed Cell Data Warrant.

probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted).  Issuing judges are to employ a practical, commonsense approach to the probable cause analysis and should avoid hyper-technical review of the legitimacy of search warrants:

> In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resultant from warrants issued without probable cause, the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place.  Probable cause deals with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.  Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations.

*United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (internal citations and quotation marks omitted).  Reviewing courts accord "great deference" to judicial determinations of probable cause to issue a search warrant.  *United States v. Leon*, 468 U.S. 897, 926 (1984); *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013).

Applying these standards, it is evident that both Judge King and Judge Larkins followed the law, used a commonsense, practical approach, and correctly found that

there was probable cause to believe that the requested searches would yield evidence of violations of law.  The facts stated in the two affidavits established probable cause to believe that the geo-location data contained in the Subject Phone and the cell site data associated with that phone would yield evidence showing the distribution of controlled substances and conspiracy to distribute controlled substances.  As explained below, Troup's arguments lack merit.

### i.    *Reliability of the SOI*

Troup challenges the probable cause of both warrants based on the fact that portions of the SOI's information were not corroborated and that the SOI was cooperating with agents in the hope of receiving consideration on possible future charges.

Contrary to Troup's argument, I find the SOI's information to have been reliable.  First, although not everything was corroborated, the affidavits reflect that agents were able to verify certain key pieces of information, including that the person who the SOI identified as a drug supplier—Tory Troup—was a real person; that Troup had a history of two prior federal drug convictions; and that Troup traveled between Atlanta and Houston, just as the SOI had stated.  Second, it appears that the SOI had an incentive to be truthful.  The SOI was not promised he/she would escape all ramifications of his/her criminal conduct; the illegal conduct was still reported to

the U.S. Probation Office.  Additionally, the SOI admitted to additional illegal conduct, even though the SOI was incriminating himself/herself to agents and did so during an interview with his/her lawyer present.  Finally, the SOI knew that the results of the investigation would be relayed to the U.S. Probation Office, which would trigger further negative consequences if he/she was untruthful.

This independent corroboration of certain aspects of the source's information, as well as the indicia of reliability of the SOI's information and motivation for being truthful, outweighs the fact that the SOI was motivated by the desire to avoid prosecution for the drug-related phone calls.  *See Illinois v. Gates*, 462 U.S. 213, 234 (1983) (noting that even if there is some doubt as to an informant's motives, such doubt can be outweighed by explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand); *United States v. Foree*, 43 F.3d 1572, 1576–77 (11th Cir. 1995) (holding that where information was only partially corroborated, the informant's veracity was shown by the creation of circumstances under which the informant was unlikely to lie).

### ii.    *Innocent reasons for travel*

Next, Troup argues that he had a valid, lawful reason to travel to Texas, and therefore, evidence that he went to Texas adds nothing to the probable cause determination.  This argument ignores the fact that travel patterns—even those

showing travel to innocuous places—can be evidence of a crime.  Here, the SOI provided specific information about Troup's travel patterns between Atlanta and Texas as well as specific details about Troup's drug trafficking activities that occurred in Texas.   The SOI's information about the travel was then later corroborated by phone and airline records.  The information about Troup's travel patterns was appropriately included in the affidavit and supported the probable cause justifying issuance of the warrants.

### iii.   The toll records

Finally, Troup argues that the toll records would not have included location information.   In response, the Government provides an excerpt from an Excel spreadsheet produced in discovery and points out that the information includes location information by date.  [Doc. 230 at 9–10].  Troup did not file a reply brief or otherwise challenge the Government's information.  Upon review of the spreadsheet attached to the Government's brief [Doc. 230-5], it appears that that toll data does reflect the phone's location on specific dates.  As such, the data was appropriately included in the affidavit and corroborated the SOI's information.

### iv.   Staleness

With respect to the later-issued Cell Data Warrant, Troup argues that the facts were stale, and therefore there was no probable cause to issue the warrant.  I disagree.

To establish probable cause to support a search warrant, the Government must come forward with information showing that it is likely that the items being searched for will be found in the place to be searched. And that information must be timely. *See United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). "[P]robable cause must exist when the magistrate judge issues the search warrant." *Id.* (citations omitted). If the application is based upon stale information, it does not show probable cause to believe that similar or other improper conduct is continuing. *Id.* In determining whether information is stale, courts look at the unique facts of each case and consider multiple factors, including the length of time between the date on which all of the facts supporting probable cause were known and the date the warrant was issued, the nature of the suspected crime, the character of the items sought, and the nature and function of the premises to be searched. *Id.*; *see also United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000). Because courts must do this case-by-case analysis, "[t]here is no particular rule or time limit for when information becomes stale." *Bervaldi*, 226 F.3d at 1265.

With respect to the nature of the suspected crime, Officer Hannan's affidavit included the fact that Troup had been indicted by a federal grand jury for conspiracy to distribute cocaine and conspiracy to commit money laundering from November

2008 through at least March 2018.[3]  As such, the affidavit showed that a grand jury had already found probable cause to believe that Troup was part of two ten-year-long conspiracies, and it logically follows that historical cell site data from Troup's phone would likely provide additional evidence of those crimes.  The SOI's information about illegal conduct in 2013, which Troup now contends was stale at the time the Cell Data Warrant was signed, occurred well within the time period of the alleged conspiracies.  Thus, although nearly six years had passed from the time the alleged illegal activities occurred to the time that Officer Hannan presented the warrant application to Judge Larkins, its relevance did not diminish.

Moreover, the nature of the information sought and the place to be searched weigh against a finding of staleness.  Historical cell site data is the type of evidence that would be expected to remain in the same place over time, unlike other types of evidence that might be moved, discarded, hidden, or otherwise disappear with the passage of time.  This is not a situation where there is a concern about authorizing a search of a location where evidence might have been in the past, but now is likely gone.  On the contrary, to the extent the phone company maintains the cell site data, agents will readily be able to determine its location.  Under these circumstances,

---

[3] The Cell Data Warrant authorized seizure of historical cell site information for the same time frame as the conspiracies alleged in the indictment.

staleness does not appear to be a concern. *See United States v. Channon,* No. CR-13-966-JCH, 2014 WL 12788057, at *5 (D.N.M. Sept. 22, 2014) (rejecting a staleness argument in connection with a warrant to search computers that had been seized two years earlier and concluding that staleness was not a concern because once the computers in the case were seized, any evidence contained on them would continue to exist).

For these reasons, I conclude that the facts stated in the affidavit supporting the Cell Data Warrant were not stale at the time Judge Larkins signed the warrant.

### v.      *Fruit of the poisonous tree*

Finally, Troup argues that evidence seized pursuant to the Cell Data Warrant should be suppressed as fruit of the poisonous tree because such evidence is directly traceable to the Geo-Location Warrant, which Troup contends should not have been issued.  As explained above, Troup's arguments for suppression of the evidence obtained pursuant to the Geo-Location Warrant fail.  Accordingly, evidence obtained from the Cell Data Warrant is not fruit of the poisonous tree.

### vi.     *Conclusion*

For all these reasons, Troup's two motions to suppress should be denied.

## II.    Motion to Dismiss (CSA)

Troup filed a motion to dismiss on March 21, 2019 that was fifty-four pages long and filled with incomprehensible legal jargon. [Doc. 114]. At a pretrial conference, I noted that the motion violated the local rule regarding page limitations and advised counsel that I could not discern what arguments Troup was trying to make in the motion. Counsel then withdrew it and filed an amended version on March 25, 2019. [Doc. 132]. The amended motion suffers from the same infirmities as the first and is even longer; it is sixty-six pages long. [*Id.*]. At another pretrial conference, I advised counsel that if Troup wanted me to consider his arguments, counsel must shorten the motion and clarify the legal theories within it. Troup then filed a shortened version, the Second Amended Motion to Dismiss on September 16, 2019. [Doc. 173].

Although significantly shorter than the previous versions, Troup's Second Amended Motion to Dismiss is, for the most part, still incomprehensible. I have used my best efforts, however, to discern the arguments. It appears that this motion is targeted only at Count One of the indictment, which alleges that Troup was part of a conspiracy to possess with the intent to distribute cocaine, in violation of 21

U.S.C. § 846.  I have construed the Second Amended Motion to Dismiss as raising

two arguments.[4]

First, it appears that Troup claims that the CSA is invalid because it was

enacted through a presidential executive order, rather than through a legitimate act

of Congress.  [Doc. 173 at 1].  I reject this argument because the Supreme Court has

repeatedly upheld convictions under the CSA and has noted that the CSA was, in

fact, passed into law by Congress. *See, e.g., Gonzales v. Raich*, 545 U.S. 1, 12-14

(2005) (giving a history of the CSA and noting that it was contained within Title II

of the Comprehensive Drug Abuse Prevention and Control Act of 1970, which

"Congress enacted").  Second, it appears that Troup is arguing that the offenses

contained in the CSA are unconstitutional because they fall outside of Congress's

commerce power.  [Doc. 173 at 2].  Courts have repeatedly held that the CSA's

criminalization of drug-related conduct was properly within Congress's commerce

power.  *See, e.g., United States v. Jackson*, 111 F.3d 101, 102 (11th Cir. 1997) ("The

illegal possession and sale of drugs affects interstate commerce, and Congress

---

[4] The two arguments that I address herein are the same arguments that the Government addressed in its response brief.  [Doc. 231].  Troup did not file a reply brief or otherwise indicate that he intended to raise other arguments.  As such, he should not be heard to object to this R&R based on how I have interpreted his arguments.

accordingly has authority under the Commerce Clause to criminalize and punish drug-related activity."). Troup's Second Amended Motion to Dismiss is meritless and should be denied.

## III.   Motion to Dismiss (pre-indictment delay)

In a second motion to dismiss, Troup argues that his Fifth Amendment right to due process has been violated as a result of pre-indictment delay. [Docs. 183, 220]. Troup claims that he has been harmed by the Government's decision to wait until 2018 to indict him, even though federal agents had information about his alleged involvement in this case at least as early as 2013 when they met with the SOI and discussed Troup's alleged drug-related activity. [Doc. 183-1 at 2; Doc. 220 at 1]. Specifically, he states that financial records were destroyed during Hurricane Harvey that could have helped him rebut the Government's "unexplained wealth" theory and because an individual named Ronald Joseph Reyes—a man who could have aided Troup in his defense by providing evidence about how Troup acquired luxury cars—has died. [Doc. 183-1 at 2; Doc. 220 at 2]. Troup argues that he is entitled to an evidentiary hearing because of "the length of time between the initiation of this investigation and the return of the indictment." [Doc. 220 at 2–3].

Statutes of limitations are the primary guarantee against the Government bringing overly stale criminal charges, providing predictable, legislatively enacted

limits on prosecutorial delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Statutes of limitations, however, do not fully define a defendant's rights with respect to the events occurring prior to indictment; thus "the Due Process Clause has a limited role to play in protecting against oppressive delay." *Id.* In analyzing speedy trial claims, courts should be mindful that:

> prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.

*Id.* at 791 (citation and internal quotation marks omitted).

To obtain a dismissal of charges due to pre-indictment delay, a defendant must make two independent showings: "(1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the government intentionally caused the delay in order to gain a tactical advantage over the defendant." *See United States v. Caporale*, 806 F.2d 1487, 1514 (11th Cir. 1986). This is an "exceedingly high" standard for the defendant to meet. *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984). The burden is on the defendant to prove these elements. *See United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995). Here, Troup has failed to meet this standard with respect to both factors.

On the issue of actual prejudice, Troup is required to show that his ability to defend against the charges in the indictment has been meaningfully impaired to the point that the disposition of case will likely be affected. *See United States v. McKoy*, 129 F. App'x 815, 819 (4th Cir. 2005). Here, Troup has not shown that his ability to defend against the charges was impaired at all, much less significantly. Although he states that some financial documents were lost and that a man with knowledge of how he acquired his luxury cars has died, Troup has identified no defense strategy that is now impaired due to the passage of time. He provides no specifics about how his defense might be aided if he had access to the (unspecified) lost documents or the (unspecified) testimony of the deceased witness. These unsupported claims are insufficient to meet the "exceedingly high" standard for making out a Due Process violation. *See United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) ("Speculative allegations, such as [a] general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice required.").

But even if Troup could show that he was prejudiced by the delay, the motion still fails because Troup has failed to demonstrate that there was an intentional delay for the purpose of gaining a tactical advantage. Showing that the government has caused an intentional delay to gain a tactical advantage is "the touchstone in preindictment cases." *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir.

2011).  In his supplemental brief, Troup cites to the legal standard, noting that a defendant must show that the delay resulted from a deliberate design by the government to gain a tactical advantage.  [Doc. 220 at 1].  Then, however, he provides no facts or argument on this prong of the test.  He has not shown what possible tactical advantage the Government would gain by waiting to indict the case, much less that the delay was intentional.

Troup has failed to show entitlement to an evidentiary hearing.  When a defendant has not even made a specific allegation of a deliberate design and improper motives backed by any evidence, an evidentiary hearing would serve only as a speculative fishing expedition into the sensitive internal deliberations of prosecutors and agents, which would be improper.  *See Thomas*, 62 F.3d at 1339.  As such, I conclude that Troup's motion to dismiss based on pre-indictment delay should be denied without a hearing.

## IV.   Conclusion

For the reasons stated, I **RECOMMEND** that each of the motions discussed herein [Docs. 122, 123, 132, 171, 172, 173, 183] be **DENIED**.

**SO ORDERED**, this 16th day of April, 2020.

CATHERINE M. SALINAS
United States Magistrate Judge