IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

TORY LENARD TROUP, FRANKLIN
BENSON TROUP, and RODRIGUEZ
REDDING

CRIMINAL CASE NO.

1:18-cr-0344-SCJ

## ORDER

This matter appears before the Court on the Non-Final Report and Recommendation ("R&R") issued by the Honorable Catherine M. Salinas, U.S. Magistrate Judge on March 17, 2020 (Doc. No. [234]) and the Final R&R issued by Judge Salinas on April 16, 2020 (Doc. No. [247]).[1] The Non-Final R&R (Doc. No. [234]) addresses three motions to dismiss filed by Defendants Tory Lenard Troup, Franklin Benson Troup, and Rodrigues Redding (Doc. Nos. [117]; [128]; [137], respectively), and a motion to suppress filed by Tory Troup (Doc. No.

_____

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

[180]). Judge Salinas recommended that all motions be denied. Tory Troup, Franklin Troup, and Rodrigues Reding all filed objections to the Non-Final R&R (Doc. Nos. [257]; [256]; [259], respectively).

The Final R&R (Doc. No. [247]) addresses four motions filed by Tory Troup: a motion to suppress evidence obtained pursuant to a geo-location warrant (Doc. Nos. [122]; [171]), a motion to suppress evidence obtained pursuant to a cell data warrant (Doc. Nos. [123]; [172]), a motion to dismiss Count I of the indictment based on the alleged illegality of the Controlled Substances Act, 21 U.S.C. 801, et seq. ("CSA") (Doc. Nos. [132]; [173]) and a motion to dismiss the indictment based on pre-indictment delay (Doc. No. [183]). Judge Salinas recommended that each motion be denied. Tory Troup filed objections to the Final R&R (Doc. No. [251]).

## I.      BACKGROUND

On September 4, 2018, a grand jury in the Northern District of Georgia returned a two-count indictment against Defendants and three others, alleging that they participated in a drug distribution conspiracy in violation of 21 U.S.C. § 846 and a money laundering conspiracy in violation of 18 U.S.C. § 1956. Doc. No. [1]. According to the indictment, both conspiracies

2

began as early as November 2008 and continued through at least March 2018. Id. at 1, 2.

### A.      Non-Final R&R Findings and Conclusions

The Non-Final R&R (Doc. No. [234]) addressed three motions to dismiss filed by Defendants Tory Lenard Troup, Franklin Benson Troup, and Rodrigues Redding (Doc. Nos. [117]; [128]; [137], respectively), and a motion to suppress filed by Tory Troup (Doc. No. [180]).

#### 1.      Motions to Dismiss

In virtually identical motions to dismiss, Defendants stated that "the evidence in this case, particularly as demonstrated by the Rule 16 discovery, does not allege any act within the applicable statute of limitations." Doc. Nos. [117], 1; [128], 1; [137], 1. Although Defendants did not cite any legal basis for their request, the Non-Final R&R construed their motions as ones brought pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), which allows a defendant to move for dismissal prior to trial for failure to state an offense. Doc. No. [234], 2; Fed. R. Crim. P. 12.

The Non-Final R&R noted that the Eleventh Circuit has held when an indictment charges violation of a conspiracy statute that does not require proof

3

of an overt act, such as the statutes in this case, "the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period." Doc. No. [234], 4 (quoting United States v. Starrett, 55 F.3d 1525, 1550 (11th Cir. 1995)). Because the indictment alleges that the conspiracies continued through at least March of 2018, "well within the five-year statute of limitations periods for those crimes provided by 18 U.S.C. 3282," the Non-Final R&R found the indictment was facially sufficient. Id. at 4. It also concluded Defendants were not entitled to an evidentiary hearing on the matter, as this request was "invit[ing] error by asking the Court to dismiss the indictment based on facts that may be produced at trial." Id. at 5.

### 2. *Motion to Suppress*

On September 27, 2019, Tory Troup filed a motion to suppress in which he stated:

> Troup was stopped by police officers in Michigan in 2014. Upon information and belief, the police seized Troup's phone and did a cellbrite download of data contained in the phone. The discovery in this case contains evidence that could have only been obtained from the information contained in Troup's cell phone. The phone was seized without probable cause and without a warrant and is therefore presumptively subject to suppression.

4

Doc. No. [180], 1. The Non-Final R&R states that On March 3, 2020, the Government advised Judge Salinas that it does not intend to introduce any evidence from that Michigan traffic stop at the trial of this case. Doc. No. [234], 6. Accordingly, she found the motion to suppress should be denied as moot. Id.

### B.   Defendants' Objections

Tory Troup, Franklin Troup, and Rodrigues Reding all filed objections to the Non-Final R&R (Doc. Nos. [257]; [256]; [259], respectively). All three Defendants appear to acknowledge Starrett's application to their motions. Doc. No. [257], 1; [256], 2; [259], 2. However, Tory Troup and Rodrigues Redding argue that Starrett "[denies] the defendant due process and equal protection of the law under the Fifth and Fourteenth Amendments" where "in a case like this there are significant questions as to whether or not the government has facts as will survive a Rule 29 motion for judgment of acquitting during the trial." Doc. No. [257], 1; [259], 5. Franklin Troup makes similar arguments, and insists he is entitled to a bill of particulars to "try and discover what evidence the Government had to establish that the crimes charged against him were within the applicable statute of limitations." Doc. No. [256], 3–4.

Tory Troup does not raise objections relating to the Non-Final R&R's denial of his motion to suppress as moot. See Doc. No. [257].

### C.   Final R&R Findings and Conclusions

The Final R&R (Doc. No. [247]) addressed four motions filed by Tory Troup: a motion to suppress evidence obtained pursuant to a geo-location warrant (Doc. Nos. [122]; [171]), a motion to suppress evidence obtained pursuant to a cell data warrant (Doc. Nos. [123]; [172]), a motion to dismiss Count I of the indictment based on the alleged illegality of the CSA (Doc. Nos. [132]; [173]) and a motion to dismiss the indictment based on pre-indictment delay (Doc. No. [183]).

### 1.   Motions to Suppress

Tory Troup moved to suppress evidence obtained pursuant to two warrants—one signed in 2013 that required AT&T to provide geo-location data ("Geo-Location Warrant") for a cellular telephone associated with him ("the Subject Phone"), and a second warrant signed in 2019 for the Subject Phone's historical cell site data ("Cell Data Warrant"). Doc. Nos. [122]; [123]. In those motions, Troup challenged the probable cause for the warrants and requested an

evidentiary hearing. The Government responded that the motions should be denied both for lack of standing and on the merits. Doc. No. [230].

The Final R&R recommended that both motions to suppress be denied because "Troup fails to allege any facts to support a reasonable expectation of privacy in the Subject Phone." Doc. No. [247], 7. Even if he had, the R&R went on to find that the motion to suppress should be denied on the merits, as "facts stated in the two affidavits established probable cause to believe that the geo-location data contained in the Subject Phone and the cell site data associated with that phone would yield evidence showing the distribution of controlled substances and conspiracy to distribute controlled substances." Id. at 11. It also found that the information provided by an informant was reliable, and that certain aspects of the source's information were independently corroborated. Id. at 11–12. Finally, the Final R&R found that information about Troup's travel patterns was appropriately included in the affidavit and supported the probable cause justifying issuance of the warrants. Id. at 12–13.

### 2.   *Motions to Dismiss*

Tory Troup's original motion to dismiss (Doc. No. [114]) based on the purported illegality of the CSA was largely incomprehensible and fifty-four

pages long. Judge Salinas warned Troup's counsel that she "could not discern what arguments Troup was trying to make" and that the brief violated the local rule on page limitations. Doc. No. [247], 17. Counsel then withdrew it and filed an amended version on March 25, 2019. Doc. No. [132]. The amended motion was even longer—sixty-six pages—and "suffers from the same infirmities as the first." Doc. No. [247], 17. At another pretrial conference, Judge Salinas advised counsel that if Troup wanted his arguments considered, counsel must shorten the motion and clarify the legal theories within it. Id. Troup then filed a shortened version, the Second Amended Motion to Dismiss on September 16, 2019. Doc. No. [173].

The Final R&R noted that the Second Amended Motion to Dismiss on September 16, 2019 (Doc. No. [173]) is "for the most part, still incomprehensible." Doc. No. [247], 17. However, it construed the motion as raising two arguments: (1) that the CSA is invalid because it was enacted through a presidential executive order (Doc. No. [173], 1); and (2) that the offenses contained in the CSA are unconstitutional because they fall outside of Congress's commerce power (id. at 2). The Final R&R rejected these arguments as meritless because (1) the Supreme Court has repeatedly upheld convictions under the CSA and has noted that the

CSA was, in fact, passed into law by Congress (Doc. No. [247], 18 (citing Gonzales v. Raich, 545 U.S. 1, 12–14 (2005))); and (2) Courts have repeatedly held that the CSA's criminalization of drug-related conduct was properly within Congress's commerce power (id. (citing United States v. Jackson, 111 F.3d 101, 102 (11th Cir. 1997))).

In a second motion to dismiss, Troup argues that his Fifth Amendment right to due process has been violated by a pre-indictment delay. Doc. Nos. [183]; [220]. Troup claims that he has been harmed by the Government's decision to wait until 2018 to indict him, even though federal agents had information about his alleged involvement in this case at least as early as 2013 when they met with an informant and discussed Troup's alleged drug-related activity. Doc. Nos. [183-1], 2; [220], 1. Troup argues that he is entitled to an evidentiary hearing because of "the length of time between the initiation of this investigation and the return of the indictment." Doc. No. [220], 2–3.

The Final R&R found that Troup failed to show both that he was actually prejudiced by any delay in bringing an indictment and that the delay was intentionally caused by the Government. Doc. No. [247], 21–22. Thus, it concluded Troup is not entitled to a dismissal due to pre-indictment delay. Id. at

9

20. It also concluded that, given the lack of allegations of actual prejudice or intentional delay, an evidentiary hearing would "serve only as a fishing expedition . . . ." Id. at 22.

### D.   Defendant Troup's Objections

Tory Troup filed objections to the Final R&R (Doc. No. [251]). Troup objects to the Final R&R's findings that the informant was reliable and that the information provided was corroborated. Doc. No. [251], 1. He argues the affidavits underlying the searches "merely contained nebulous allegations from the [informant] that Troup had supplied the [informant] with 30 kilograms of cocaine over the past two years." Id. at 2. He also argues that the informant was not reliable because he was "promised he would not be prosecuted for any of the alleged illegal activity that he was describing." Id. Troup also objects to the Final R&R's conclusion that his travel patterns supported a finding of probable cause. Id. He asks that this court reject the R&R's findings that the search warrants were supported by probable cause. Id. He does not object to the Final R&R's findings regarding his motions to dismiss.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which Defendant has timely and specifically objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667 (1980). The district judge must "read the transcript of the hearing before a magistrate on a motion to suppress, before adopting the magistrate's recommendation." United States v. Elsoffer, 644 F.2d 357, 358 (5th Cir. 1981) (per curiam).[2]

For a party's objections to warrant de novo review, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The Eleventh Circuit has noted that "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). The remainder of the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F.Supp.2d 1366, 1373 (N.D. Ga. 2006) ("[I]ssues upon which no specific objections are raised do not so require de novo review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

III.   **ANALYSIS**

The Court addresses the objections to each R&R in turn.

**A.**   **The Court Adopts the Non-Final R&R**

First, the Court addresses the form of Defendants' motions. While Defendants' motions mention a bill of particulars,[3] Judge Salinas construed them as motions to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), not motions pursuant to Rule 7(f). None of the three Defendants raise any objection to this interpretation of their motions. Seeing no clear error, the Court reviews the motions as ones to dismiss pursuant to Rule 12(b)(3)(B)(v).

---

[3] "The court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f).

Next, the Court notes that Defendants' objections to the Non-Final R&R are both general and conclusive. Marsden, 847 F.2d at 1548. Far from pinpointing specific findings to which they object, Defendants simply reiterate their arguments from their motions to dismiss—that the Government lacks evidence that the conspiracy continued into the applicable statute of limitations period. Doc. Nos. [257], 1; [256], 5–6; [259], 4–5. They argue that the Court should require the government to show provide evidence to establish acts within the statute of limitations *in camera*, "notwithstanding the fact that conspiracies such as the ones alleged in this indictment do not require an overt act." Doc. No. [259], 6; see also Doc. Nos. [256], 10; [257], 1 (requesting an *in camera* inspection).

The Court need not review general or conclusive objections de novo. Id. However, even assuming Defendants' objections were properly raised, they are due to be overruled.

The Federal Rules of Criminal Procedure require that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Eleventh Circuit has held that "[t]he sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute." United States

v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam).  Importantly, "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." Id. In addition, "an indictment for conspiracy to commit a criminal offense need not be as specific as a substantive count." United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983) (quoting United States v. Ramos, 666 F.2d 469, 475 (11th Cir. 1982)), cert. denied, 464 U.S. 917 (1983).

Like the defendant in Critzer, Defendants here invite error which the Non-Final R&R correctly refused to commit. Defendants ask this Court to address the sufficiency of the Government's evidence on a motion to dismiss. The Federal Rules of Criminal Procedure do not permit the Court to do so. See id. (reversing a trial court's dismissal where the court had considered facts that the Government stated it intended to prove at trial); see also United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (reversing a trial court's post-trial dismissal where the court considered the evidence that had been presented at trial).

Constitutional requirements are fulfilled "by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime." Yonn, 702 F.2d at 1348. The Eleventh Circuit has held that, "[w]ith

14

respect to conspiracy statutes that do not require proof of an overt act," such as the statutes in this case,[4] "the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period." Starrett, 55 F.3d at 1550 (quoting United States v. Gonzalez, 921 F.2d 1530, 1548 (11th Cir. 1991)). The indictment here meets those requirements. Thus, Defendants' objections are **OVERRULED**.

B. **The Court Adopts the Final R&R**

The Court now turns to Tory Troup's Objections to the Final R&R. Doc. Nos. [247] (Final R&R); [251] (Objections). Troup objects to the Final R&R's findings that the informant was reliable and that the information provided was corroborated. Doc. No. [251], 1. Troup also objects to the Final R&R's conclusion that his travel patterns supported a finding of probable cause. Id. He does not

_____

[4] As the Non-Final R&R noted, the two statutes at issue in this case—21 U.S.C. § 846 (drug conspiracy) and 18 U.S.C. § 1956 (money laundering conspiracy)—do not require proof of an overt act in furtherance of the conspiracy; for purposes of those statutes, the act of conspiring is all that is necessary. Doc. No. [234], 3; see also Whitfield v. United States, 543 U.S. 209, 219 (2005) ("[C]onviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), does not require proof of an overt act in furtherance of the conspiracy."); United States v. Shabani, 513 U.S. 10, 17 (1994) ("[P]roof of an overt act is not required to establish a violation of 21 U.S.C. § 846.").

15

raise a specific objection to the Final R&R's conclusion regarding his lack of Fourth Amendment standing.

Because Troup does not object to the Final R&R's factual recitation of the warrant procedure in this case, including the content of the affidavits relied upon, the Court adopts it in full. See Doc. No. [247], 2–6. Troup does object to the Final R&R's legal conclusions that the informant[5] was reliable and that the information provided was corroborated. Doc. No. [251], 1. He argues the affidavits underlying the searches "merely contained nebulous allegations from the [informant] that Troup had supplied the [informant] with 30 kilograms of cocaine over the past two years." Id. at 2. He also argues that the informant was not reliable because he was "promised he would not be prosecuted for any of the alleged illegal activity that he was describing." Id.

### 1.    *Applicable Legal Standard*

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." United

---

[5] It appears that the same informant's information was used as the basis for both warrants.

16

States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984). Probable cause is not a

high bar and "requires only a probability or substantial chance of criminal

activity, not an actual showing of such activity." Paez v. Mulvey, 915 F.3d 1276,

1286 (11th Cir. 2019) (internal quotation marks and citation omitted). "[T]he task

of a reviewing court is not to conduct a de novo determination of probable cause,

but only to determine whether there is substantial evidence in the record

supporting the magistrate judge's decision to issue the warrant." United States v.

Bushay, 859 F. Supp. 2d 1335, 1379 (N.D. Ga. 2012) (citing Massachusetts v.

Upton, 466 U.S. 727, 728 (1984)). Thus, the reviewing court is to "afford 'great

deference' to the determination of a magistrate judge that a search warrant

affidavit is supported by probable cause, and we uphold the determination of the

magistrate judge so long as he 'had a substantial basis for concluding that a

search would uncover evidence of wrongdoing.'" United States v. Joseph, 709

F.3d 1082, 1093 (11th Cir. 2013) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

**2.      *The Final R&R Correctly Found that the Geo-Location Warrant was Supported by Probable Cause***

The Geo-Location Warrant was supported by probable cause because the

affidavit established "a connection between the defendant and the location to be

searched; a link between the location and criminal activity; and the informant's

17

veracity and basis of knowledge." <u>United States v. Joseph</u>, 709 F.3d 1082, 1099 (11th Cir. 2013) (internal alterations and citation omitted).

First, the Court finds the affidavit created a sufficient connection between the Defendant and the Subject Phone. The informant identified Troup as having provided the informant with more than thirty kilograms of cocaine since 2011. Doc. No. [230-2], ¶ 15. The informant stated that Troup frequently changed phones to avoid detection—however, the informant stated Troup also had a phone, the Subject Phone, which he primarily used for social purposes. <u>Id.</u> ¶ 17. The informant stated that Troup had used the Subject Phone to call him or her. <u>Id.</u> ¶ 18.

Second, the affidavit created a sufficient connection between the Subject Phone and Criminal Activity. The informant stated this phone was always in Troup's possession, even when he was conducting drug business. <u>Id.</u> ¶ 17. The informant also stated that he or she was directed by Troup to call the Subject Phone to discuss a drug debt, which he or she did. <u>Id.</u> ¶ 18.

Third, the Court finds that the information demonstrated a sufficient basis for his or her knowledge. In September 2013, the informant was caught on the wiretap having drug-related phone communications and agreed to provide law

18

enforcement with information about drug activities. Doc. No. [230-1] ¶ 11. Thus, the informant was connected to the kind of criminal activity at issue here. The informant also exhibited detailed knowledge of Troup's alleged drug dealings and his travel history. Id. ¶¶ 15, 16.

The affidavit also established that the informant's information was likely accurate. It is true that the informant was on federal supervised release at the time and agreed to cooperate in exchange for not being prosecuted in connection with the intercepted communications. Id. ¶¶ 12, 13. However, the Probation Office was informed and could choose to seek revocation of the informant's supervised release based on the conduct related to the intercepted communications. Id. ¶ 13. Thus, the informant knew that the results of the investigation would be relayed to the Probation Office, which would trigger negative consequences if he or she was untruthful. Even so, the informant, with counsel present, potentially incriminated him or herself and admitted to additional illegal activity. The Court rejects Troup's argument that the non-prosecution agreement alone renders the informant unreliable.

Finally, although independent police corroboration is not required for probable cause to exist (see United States v. Brundidge, 170 F.3d 1350, 1353 (11th

Cir. 1999)), much of the informant's information was independently corroborated. Agents confirmed that the person referenced by the informant, Tory Troup, was a real person with two pervious federal drug convictions. Doc. No. [230-2], ¶ 15. Troup's trips to Texas described by the informant were also independently confirmed by toll records from Troup's phone and by information provided by Delta Airlines in response to a subpoena. Id. ¶ 19.

Thus, the Court agrees with the Final R&R's conclusion that "[t]he facts stated in the [affidavit] established probable cause to believe that the geo-location data contained in the Subject Phone . . . would yield evidence showing the distribution of controlled substances and conspiracy to distribute controlled substances." Doc. No. [247], 11. Tory Troup's objections are **OVERRULED**.

### 3. *The Final R&R Correctly Found the Cell Data Warrant was Supported by Probable Cause*

The Cell Data Warrant was also supported by probable cause. In the underlying affidavit for that warrant, a DEA agent stated that Troup had been indicted by a federal grand jury on September 4, 2018 for being part of two conspiracies that began no later than November 2008 and lasted until March 2018. Doc. No. [230-4], ¶ 12. He reiterated some of the information used to obtain the Geo-Location Warrant, including that Troup had supplied the informant with

20

30 kilograms of cocaine, and the information regarding Troup's travel between Atlanta and Houston. Id. ¶ 14. The agent also stated that agents had "conducted physical surveillance of Troup in Houston." Id.

The affidavit goes on to state that subscriber information from AT&T for the Subject Phone's number showed that the account had been in service since May 2008, during which time it had been subscribed to a person named "Tory Troup," with mailing and email addresses that are the same as those associated with Troup. Id. ¶ 16. The affidavit states that investigators needed historical cell site records for the time period of the conspiracies alleged in the indictment, November 2008 through March 2018, as evidence of Troup's travel patterns and would establish specific dates and times that Troup was in locations in furtherance of his criminal activities. Id. ¶¶ 17, 18.

For similar reasons as those stated supra, the Court finds the affidavit sufficiently connected the Subject Phone's cell data to both Troup and criminal activity. That Troup owned the phone was independently corroborated by AT&T records. Id. ¶ 15. The address from the AT&T subscriber account was confirmed to be the same address Troup used for his known bank accounts and business entities. Id. ¶ 18. Again, his travel patterns were corroborated by airline records.

Id. ¶ 14.  This affidavit contained additional corroboration of Troup's travel: it stated Troup had made corresponding bank account withdrawals in Houston, and that agents had conducted physical surveillance of Troup in Houston. Id.

Thus, the Court agrees with the Final R&R's conclusion that "[t]he facts stated in the [affidavit] established probable cause to believe that . . . the cell site data associated with [the Subject Phone] would yield evidence showing the distribution of controlled substances and conspiracy to distribute controlled substances." Doc. No. [247], 11. Tory Troup's objections are **OVERRULED**.

### 4.   *Troup's Travel Pattens were Properly Considered by the Warrant-Issuing Judge*

Troup also objects to the Final R&R's conclusion that his travel patterns supported a finding of probable cause. Doc. No. [251], 2. He argues that "none of the information related to Troup's travel referred to any drug transaction," and that his trips to Houston "were obviously innocent travel." Id. The Court disagrees and finds the warrant-issuing judge properly considered Troup's travel patterns in the probable cause analysis.

First, the affidavits do connect Troup's travel to drug activity. Both affidavits stated that would travel from Atlanta to Texas to acquire drugs and ship those drugs back to his customers. Doc. Nos. [230-2], ¶ 16; [230-4], ¶ 14. Both

22

also stated Troup would wait in Texas to be paid by his customers, and then pay his source of supply in Texas and return to Atlanta. Id. The informant's description of this travel was corroborated by toll data (Doc. Nos. [230-2], ¶ 19), airline records (id.), and bank account withdrawals (Doc. No. [230-4], ¶ 14). Thus, the Court agrees with the Final R&R's conclusion that "the information about Troup's travel patterns was appropriately included in the affidavit and supported the probable cause justifying issuance of the warrants." Doc. No. [247], 13. Tory Troup's objections are **OVERRULED**.

## IV.   CONCLUSION

For the foregoing reasons, the Non-Final R&R issued on March 17, 2020 (Doc. No. [234]) is **ADOPTED IN FULL**. The motions to dismiss filed by Defendants Tory Lenard Troup, Franklin Benson Troup, and Rodrigues Redding (Doc. Nos. [117]; [128]; [137]), and a motion to suppress filed by Tory Troup (Doc. No. [180]) are **DENIED**. Defendants' objections to the Non-Final R&R (Doc. Nos. [257]; [256]; [259]) are **OVERRULED**.

The Final R&R issued on April 16, 2020 (Doc. No. [247]) is also **ADOPTED IN FULL**. Tory Troup's a motion to suppress evidence obtained pursuant to a geo-location warrant (Doc. Nos. [122]; [171]), motion to suppress evidence

obtained pursuant to a cell data warrant (Doc. Nos. [123]; [172]), motion to dismiss Count I of the indictment based on the alleged illegality of the Controlled Substances Act, 21 U.S.C. 801, et seq. ("CSA") (Doc. Nos. [132]; [173]), and motion to dismiss the indictment based on pre-indictment delay (Doc. No. [183]) are **DENIED**. Tory Troup's objections to the Final R&R (Doc. No. [251]) are **OVERRULED**.

IT IS SO ORDERED this __12th__ day of May, 2021.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**